**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

PATRICK WEST,                  )     3:05-CV-0394-ECR-RAM
                               )
                               )
Plaintiff,                     )     **<u>ORDER</u>**
                               )
vs.                            )
                               )
INNOTRAC CORPORATION, a        )
Georgia Corporation,           )
and DOES I through X,          )
inclusive,                     )
                               )
                               )
Defendants.                    )
_____)

**I. Procedural Background**

    On August 15, 2005, Patrick West ("West" or "Plaintiff")
filed an Amended Complaint against Innotrac and ten other unnamed
defendants ("Innotrac" or "Defendants") alleging claims of breach
of contract, breach of implied covenant of good faith and fair
dealing, fraud or intentional misrepresentation, negligent
misrepresentation, breach of duty of care, intentional ommissions
and failure to disclose, general negligence, breach of fiduciary
duty, and violations of Section 12(a)(2) of the Securities Act of
1933 and Rule 10b-5 of the Securities Exchange Act of 1934,
violation of NRS 90.570, 90.580, and 90.605 and violation of

Nevada's RICO statute.  On August 29, 2005, Defendants filed a Motion to Dismiss (#14).  Plaintiff responded to the Motion (#18) on September 21, 2005, and Defendants replied (#19) on October 5, 2005.  The motion (#14) is ripe, and we now rule on it.

For the reasons stated below, Defendants' motion (#14) will be **granted in part and denied in part.**

## II.   Statement of Facts

In considering motions to dismiss, we take the evidence as presented in Plaintiff's Complaint in the light most favorable to the Plaintiff.

Patrick West was an owner of UDS when he and the other owners and shareholders were approached by Innotrac in December 2000 to merge the two companies.  On December 8, 2000, Innotrac and UDS and shareholders of UDS entered into a Merger Agreement in which Innotrac was to purchase UDS and give shares of Innotrac to the shareholders of UDS.  West was given shares upon the merger and became a shareholder of Innotrac in January 2001.  He remained a shareholder until January 2004.  Pursuant to the Merger Agreement, West also became an employee of Innotrac.  West was employed by Innotrac from January 2001 until March 2004.  West signed an Employment Agreement (Exhibit A attached to the Amended Complaint). which provided that West would receive exercisable options to purchase 50,000 shares of common stock of Innotrac at a price equal to the fair market value of the shares valued at the date of the granting of the options.  Such purchase was subject to terms and conditions as set forth in a separate option agreement

and in the "stock option plan."  Such terms and conditions included that 50% of the options would vest on the second anniversary of the date the options were granted, 25% on the third anniversary, and 25% on the fourth anniversary.  This grant was conditioned, however, on West remaining an employee of Innotrac. West claims that although he was given a copy of the Employment Agreement, he was never given a copy of the stock option plan or a separate option agreement even though his signature appears on the separate option agreement. West claims he was not informed, orally or in writing, as to the expiration of the stock options upon his resignation.

In February 2001, Innotrac authorized the issuance of stock options in West's name for 50,000 shares.  At the time the options were issued, the fair market value of each share (the strike price) was $3.125.

On December 5, 2003, West communicated his desire to exercise his stock options beginning in January 2004 with the intent being to sell all his shares in Innotrac at the end of January 2004.[1] In a meeting with Innotrac executives on December 15, 2003, he again communicated his desire to exercise his stock options. Innotrac's President Scott Dorfman and David Farnsey rejected West's exercise of his stock options claiming that West had entered into an agreement with IPOF, an investment fund, that he, as an Innotrac executive, would not dispose of Innotrac shares.

---

[1]In January 2004, Innotrac shares were trading at $11.00 per share.  West would have been entitled in January 2004 to 37,500 shares which would have vested by that time.

3

West was informed that if he intended to sell his shares, that he would need to include his shares in a private placement sale for Innotrac executives.

West claims that on March 1, 2004, other officers and executives sold shares of Innotrac causing a loss of $10,000,000. West resigned from Innotrac on March 29, 2004, before the loss was publicly announced.

On January 10, 2005, nine months after his resignation, West again attempted to exercise his stock options. His request was again refused by Dorfman who claimed that stock options needed to be exercised within 90 days of an employee's resignation. West claims that the 2000 Stock Option and Incentive Award Plan which was effective March 28, 2000, before Innotrac gained control of UDS, did not contain a ninety-day expiration period but allowed up to ten years after issuance of the options for exercise.

Plaintiff claims that although there is a stock option agreement which has Plaintiff's signature on it, the signature is a forgery and that he never saw such document, let alone signed it.

**III.   Discussion**

Innotrac has moved to dismiss Plaintiff's Tort Claims – Third (Fraud), Fourth (Negligent Misrepresentation), Fifth (Breach of Duty of Care), Sixth (Intentional Ommissions and Failure to Disclose), and Eighth (General Negligence) as barred by the doctrine of economic loss. Innotrac has also moved to dismiss Plaintiff's Seventh Claim for Relief (Breach of Fiduciary Duty)

4

because Nevada law does not recognize a fiduciary duty between a corporation and its shareholders or between an employer and its employees.  Innotrac also moves for dismissal of Plaintiff's Ninth (Federal Securities) and Eleventh (Nevada Securities) Claims for Relief because Plaintiff did not pay anything for the options and therefore has no damages.  Innotrac moves for dismissal of Plaintiff's Tenth Claim of Relief (Federal Securities Fraud) because Plaintiff has failed to plead with particularity as is required under Rule 9(b) and the Private Securities Litigation Reform Act of 1995.  Innotrac also moves to dismiss Plaintiff's Twelfth Claim for Relief (Nevada RICO) as Plaintiff has failed to plead all the elements of such a violation.  And lastly, Defendants have moved to dismiss Plaintiff's Thirteenth Claim for Relief (Punitive Damages) because, if the tort claims are dismissed, Plaintiff has no right to punitive damages under his remaining claims.

**A. Standard of Review**

A motion to dismiss under <u>Fed. R. Civ. P. 12(b)(6)</u> will only be granted if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Lewis v. Tel. Employees Credit Union</u>, 87 F.3d 1537, 1545 (9th Cir. 1996).  On a motion to dismiss, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim."  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992) (quoting <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 889 (1990)) (alteration in original).  Moreover,

5

"[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted).

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." In re Stac Elecs., 89 F.3d at 1403 (citation omitted).

Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is normally limited to the complaint itself. See Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. Fed. R. Civ. P. 12(b); see United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials -- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice -- without converting the motion to dismiss into a motion for summary judgment." Ritchie, 342 F.3d at 908.

If documents are physically attached to the complaint, then a court may consider them if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them." Lee, 250 F.3d at 688 (citation, internal quotations and ellipsis

6

omitted).  A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim."  Ritchie, 342 F.3d at 908.  Finally, if adjudicative facts or matters of public record meet the requirements of Fed. R. Evid. 201, a court may judicially notice them in deciding a motion to dismiss.  Id. at 909; see Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

"Dismissal on statute of limitations grounds can be granted pursuant to Fed. R. Civ. P. 12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'"  TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999)(quoting Vaughan v. Grijalva, 927 F.2d 476, 478 (9th Cir. 1991)(internal citations omitted)).

As Plaintiff attached to his Complaint the Employment Agreement as Exhibit A, we will consider it in determining the Motion to Dismiss.

**B.  Economic Loss Doctrine**

In Nevada, "under the economic loss doctrine, economic losses are not recoverable in negligence absent personal injury or damages to property other than the defective entity itself."

7

1   <u>Calloway v. City of Reno</u>, 116 Nev. 250, 993 P.2d 1259 (2000)

2   (superseded by statute on the grounds that "a negligence claim can

3   be alleged in a construction defects cause of action initiated

4   under Chapter 40.")(<u>Olson v. Richard</u>, 89 P.3d 31, 33 (2004)). "The

5   economic loss doctrine marks the fundamental boundary between

6   contract law, which is designed to enforce the expectancy

7   interests of the parties, and tort law, which imposes a duty of

8   reasonable care and thereby encourages citizens to avoid causing

9   physical harm to others."  <u>Calloway</u>, 116 Nev. at 256. "The

10  question to be determined . . . is whether the actions or

11  omissions complained of constitute a violation of duties imposed

12  by law, or of duties arising by virtue of express agreement

13  between parties."  <u>Id</u>.

14      Plaintiff claims that the economic loss doctrine should not

15  apply to West's claims because, as in <u>Olson</u>, the Nevada state

16  legislature intended there to be negligence actions for tort

17  damages caused in connection with the sale of securities.

18  Plaintiff cites NRS 90.570 and 90.660 for such a proposition.

19      However, Plaintiff's argument is inapposite.  In <u>Olson</u>, the

20  Nevada Supreme Court held that NRS 40.640 expanded but did not

21  *expressly define* the liability for construction defects.

22  Therefore, NRS 40.640 allowed homeowner's recovery under common

23  law *not statute* for tort as well as contract and warranty as the

24  legislature had expanded recovery to reach tort damages.

25      However, with regard to NRS 90.570 and 90.660, the Nevada

26  legislature has *specifically* limited the liability and has not

27  broadened the tort recovery under common law.  Indeed, the passage

28                              8

from NRS 90.660 cited by Plaintiff in his opposition expressly holds that "the purchaser may recover the consideration paid for the security and interest at the legal rate of this state from the date of payment, costs and reasonable attorney's fees, less the amount of income received on the security." NRS 90.660. As this section demonstrates, if the plaintiff can demonstrate violation of either NRS 90.310, NRS 90.500, NRS 90.570, NRS 90.610 or NRS 90.500, the plaintiff can recover *specific statutory damages*. The Nevada legislature's intent in creating this provision was not to expand the tort damages that could be recovered beyond those for breach of contract, but it was to give plaintiffs additional statutory recovery. We do not dispute Plaintiff's ability to sue under NRS 90.660 for statutory damages but we reject his attempt to broaden this statute to allow tort recovery normally barred by the economic loss doctrine.

Plaintiff is unable to cite to a case holding that the relationship between a shareholder and an officer or an employer and employee creates an exception to the doctrine of economic loss.

Plaintiff cites <u>Western Industries, Inc. v. General Insurance Co.</u>, 91 Nev. 222, 533 P.2d 473 (1975) for the proposition that corporate directors have a fiduciary relationship to their shareholders. We reject this contention finding it a disingenuous characterization of the case – <u>Western</u> stands for the proposition that a corporate director has a duty of good faith, honesty and disclosure to *the corporation* as opposed to the shareholders. <u>Western</u>, 533 P.2d at 476.

Although Plaintiff claims that <u>Leavitt v. Leisure Sports,</u>
<u>Inc.</u>, 103 Nev. 81, 734 P.2d 1221 (1987) stands for the proposition
that a corporate officer has a fiduciary duty to its shareholders,
we find this characterization, again, disingenuous.  <u>Leavitt</u>
quotes <u>Western</u> for the proposition that "a corporate officer or
director stands as fiduciary to the corporation."  <u>Leavitt</u>, 103
Nev. at 86 (quoting <u>Western</u>, 533 P.2d at 476).

Judge Pro reached the same conclusion in <u>Agribiotech, Inc. v.</u>
<u>Anthony H.N. Schnelling</u>, 319 B.R. 216, 223 (D. Nev. 2004) quoting
*the exact same language* we have cited above from the Nevada
Supreme Court indicating there is nothing concrete said concerning
the fiduciary relationship between corporate officers and its
shareholders.  Although shareholders can sue in class action on
behalf of the corporation for a duty owed to the corporation, <u>id</u>.
at 223, this case says nothing about a fiduciary relationship owed
to shareholders.

The above analysis of the cases Plaintiff puts forth, we
find, characterizes the rest of the cases and treatises that
Plaintiff cites. In addition, we do not see how such a fiduciary
duty of corporate officers to shareholders, if it existed, would
create an exception to the doctrine of economic loss and would
allow for recovery of tort damages for claims based on contractual
duties.  In addition, Plaintiff has failed to show how the breach
of the Merger Agreement and Employment Agreement would have
affected his status as a shareholder.  Plaintiff is alleging
claims that he, as an employee, was given stock options which were

not granted under contract.  None of these claims relate to his position as a shareholder.

Plaintiff's cite to <u>Bernard v. Rockhill Development</u>, 103 Nev. 132, 734 P.2d 1238 (1987) does not support his contentions.  In <u>Bernard</u>, the Nevada Supreme Court held that because Bernard's claims were *not based on the contract*, Bernard could recover for tort damages separate from damages based on the contract.

Plaintiff lastly claims that the Nevada Supreme Court has held that "a plaintiff can assert a contractual claim and also one for fraud based on the facts surrounding the contract's execution and performance."  <u>Great American Ins. Co. v. General Builders, Inc.</u>, 113 Nev. 346, 351, 934 P.2d 257 (1997).  Plaintiff overlooks the fact that the basis for this holding in <u>Great American Ins.</u> related to a breach of implied covenant of good faith and fair dealing – a claim which Defendants have not moved to dismiss in this case.  We do not address Plaintiff's ability to bring such a claim and focus only on those tort claims outside the First and Second Claims for Relief.

We therefore examine West's claims to determine whether they allege damages in connection with the breach of the agreements between West and Innotrac (Employment Agreement and Merger Agreement) or whether they allege damages in connection with a tort liability separate from the liability under contract.

West's Third Claim for Relief is for fraud in connection with statements made to West when he attempted to exercise his options in December 2003.  West claims that such false representations were intentionally made to induce West into not exercising his

11

options. He also claims that the forged signature constitutes fraud.  However, these false representations and the alleged forgery are part of the breach of contract claim.  In making these false statements, it is alleged that Innotrac breached its agreement to provide West with those stock options.  Whether or not the signature is genuine will be a question of fact in the contract action.  This Court has held that "the Nevada Supreme Court would find that the economic loss doctrine bars intentional fraudulent tort claims that are interwoven with contractual claims." Yerington Ford, Inc. v. GMAC, 359 F.Supp.2d. 1075, 1082 (D. Nev. 2004).  Therefore, West's Third Claim for Relief is barred by the economic loss doctrine.

West's Fourth Claim for Relief based on negligent misrepresentations is similar to the fraudulent misrepresentations alleged in Third Claim for Relief.  See id. at 1094.

West's Fifth Claim, regarding a duty to disclose accurate information, is based on the "employer contract" and is therefore barred by the economic loss doctrine.

West's Eighth Claim of Relief is also based on insufficient information which caused him not to be able to exercise his stock options.  Thus, this claim, based on the contract at issue, is barred as well.

**C.  Breach of Fiduciary Duty**

As has been discussed above, Plaintiff has been unable to find caselaw in Nevada for the proposition that, *as specified in common law,* a corporate officer has a fiduciary duty to the

12

shareholders.  Because Plaintiff cannot create a basis of liability, his Eighth Claim of Relief, for breach of fiduciary duty, will be dismissed.

We note, in addition, that Plaintiff is suing for his inability, as an employee under contract, to exercise his stock options and not as to any claim that relates to loss of value of his stocks which affected his status as a shareholder.  Therefore, this "breach of fiduciary duty" based on his status as a shareholder will also be dismissed on this ground.

Plaintiff also argues that there is a fiduciary duty between an employer and an employee.[2]  Plaintiff's cases are inapposite to these propositions: (1) White Cap. Indus., Inc. v. Ruppert, 119 Nev. 126, 67 P.3d 318, 319 (2003) stands for the proposition that an employee has a *duty of loyalty* to the corporation; (2) Matthews v. Collman, 110 Nev. 940, 942, 878 P.2d 971 (1994) also stands for the proposition that an employee has a duty of loyalty to her employer; (3) Jory v. Bennight, 91 Nev. 763, 542 P.2d 1400 (1975) allowed homeowners to sue for breach of fiduciary duties against a real estate broker; and (4) Southwest Gas. Corp. v. Ahmad, 99 Nev. 594, 668 P.2d 261 (1983) held that employee handbook provisions created express duties between an employer and an employee. Nothing in these cases demonstrates that a fiduciary duty exists between an employee and an employer.

---

[2]Although the Nevada Supreme Court has held that a special reliance exists between the two parties (employer and employee) in limited contexts that would justify tortious breach of implied covenant of good faith and fair dealing, it has not found such special relationship sufficient to create a fiduciary duty. Martin v. Sears, Roebuck & Co., 111 Nev. 923, 926-27, 899 P.2d 551 (1995).

13

We note that the Ninth Circuit has held that "fiduciary duties in the employer-employee relationship are limited to discrete, well-defined obligations." Thorman v. Am. Seafoods Co., 421 F.3d 1090, 1098 (9th Cir. 2005)(citing 19 Richard A. Lord, *Williston on Contracts* §54.18 (4th ed. 2003) ("explaining employers owe employees 'two basic duties': (1) compensation in accordance with their agreements and indemnification for losses and (2) a safe workplace.")). For example, an employer is subject to fiduciary duties imposed by federal law. Id. Accordingly, while state and federal statutory law can create a fiduciary relationship between an employer and employee, Nevada common law imposes no such obligations between these parties.

We find, therefore, that there was no basis for a claim of fiduciary duty between Plaintiff and Defendants and therefore there could be no breach of this fiduciary duty.

**D. Securities Claims**

Defendants claim that Plaintiff's securities claims (state and federal) should be dismissed as Plaintiff did not pay anything for his stock options and therefore has no damages and no relief sought.

Defendants argue that since damages in a Section 12(a)(2) action are limited to "rescission" or "rescission-like" damages, Plaintiff has not suffered damages and cannot recover anything since he never paid for the options. 15 U.S.C. §77l(2)(a).

Defendants' argument is a misstatement of this Circuit's interpretation of securities law. The Ninth Circuit has held that

14

a grant of employee stock options (as opposed to a stock bonus for employees) is a "sale" for purposes of Section 12(a)(2) and therefore can support a claim under the securities act. <u>Falkowski v. Imation Corp.</u>, 309 F.3d 1123 (9th Cir. 2002). "The grant of an employee stock option on a covered security is therefore a 'sale' of that covered security.  The option is a contractual duty to sell a security at a later date for a sum of money, should the employee choose to buy it.  Whether of not the employee ever exercises the option, it is a 'sale' under Congress' definition." <u>Falkowski</u>, 309 F.3d at 1129-30.

Because the Ninth Circuit has held that a grant of a stock option plan is a sufficient basis for a "sale" under Section 12(a)(2), we find that Plaintiff has a sufficient basis for his Ninth Claim of Relief and Defendants' motion to dismiss will be denied.

The exact amount of Plaintiff's damages will be determined at a later time.  We refuse to look now into our crystal ball to determine damages before liability.  We note that the exercise of the stock options was conditioned on Plaintiff's continued employment with Innotrac making the ability to exercise those options seemingly dependent upon Plaintiff's contribution of labor to the corporation. Since this may be construed as the basis for the damages, we find that the motion to dismiss on this claim is without merit.

We find the same reasoning persuasive in declining to dismiss the Nevada state securities action.  First, the granting of employee stock options can be seen as a "sale" of securities for

15

purposes of NRS 90.570.  Second, Plaintiff may be awarded damages
on the basis that he devoted labor or that he gained these options
in exchange for labor and therefore, the claim that there are no
damages is without merit.

**E.   Failure to Plead with Particularity**

Defendants' claims that Plaintiff has failed to plead his
Tenth Claim for Relief, for violation of the Securities Act 10b-5,
17 C.F.R. § 240.10b-5, with particularity required by Fed. R. Civ.
P. 9(b) and by the Private Securities Litigation Reform Act of
1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(1).

The elements that Plaintiff must plead in a 10b-5 violation
are (1) a misstatement or false statement, (2) of material fact,
(3) scienter, (4) causation, (5) damages.  DSAM Global Value Fund
v. Altris Software, Inc., 288 F.3d 385, 388 (9th Cir. 2002).

Under the Private Securities Litigation Reform Act, § 78u-
4(b)(1-2), a complaint must "specify each statement alleged to
have been misleading, the reason or reasons why the statement is
misleading, and, if an allegation regarding the statement or
omission is made on information and belief, the complaint shall
state with particularity all facts on which the belief is formed."
15 U.S.C. § 78u-4(b)(1).  In addition, the complaint is required
to "state with particularity facts giving rise to a strong
inference that the defendant acted with the required state of
mind."  15 U.S.C. § 78u-4(b)(2).  The required state of mind
defined by the Ninth Circuit is acting with "intentionality or

deliberate recklessness . . ..." <u>Ronconi v. Larkin</u>, 253 F.3d 423, 429 (9th Cir. 2001)(internal quotations and citations omitted).

In order to meet the requirements of Fed. R. Civ. P. 9(b), a complaint must plead the "circumstances constituting fraud." <u>In re GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994). The circumstances including the "time, place, and nature of the alleged fraudulent activities," must be plead as well as why those statements were false. <u>Walling v. Beverly Enterprises</u>, 476 F.2d 393, 397 (9th Cir. 1973); <u>Warshaw v. Xoma Corporation</u>, 74 F.3d 955, 957 (9th Cir. 1996).

First, regarding the requirements of Fed. R. Civ. P. 9(b), Plaintiff has plead sufficiently.  West has included the content of allegedly false statements made to him at the time he attempted to exercise his options in December 2003 and in January 2005, nine months after his resignation.  Plaintiff has included a reason for their falsity – that Defendants had no relationship with IPOF that he was aware of and although Defendants claimed he had signed an agreement that would limit the exercising of his options to 90 days after leaving Innotrac, Plaintiff claims he never saw such document, let alone signed it.

Turning then to the requirements of the PSLRA, Plaintiff has again plead the misstatements and alleged why they were false.  In addition, Plaintiff has plead the scienter element by displaying Defendants' intent in denying him the ability to exercise his stock options.  Plaintiff claims that "[i]f West was denied his ability to exercise his stock options, Innotrac would have fewer issued shares, the share price would remain higher, the Innotrac

17

shares would avoid dilution, and the optioned shares would return to the pool of shares available to be issued to the officers and employees of Innotrac under securities regulations."  We find that West has therefore sufficiently plead his section 10b-5 securities claim.

**F.   RICO Claims**

Plaintiff has also plead a RICO claim based on Defendants' violation of Nevada state securities laws NRS 90.570, 90.580, and 90.660.

The racketeering statute of Nevada makes it unlawful for a person:

> (A) Who has with criminal intent received any proceeds derived, directly or indirectly, from racketeering activity to use or invest, whether directly or indirectly, any part of the proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of:
>     (1) Any title to or any right, interest or equity in real property; or
>     (2) any interest in or the establishment or operation of any enterprise...

NRS 207.400.

As can be discerned from the statute, there must be a "racketeering activity" involved in the crime of "racketeering" under NRS 207.400 and 207.470.

A "racketeering activity" is defined in NRS 207.390 and requires that the person engage in at least "two crimes related to racketeering . . ."  NRS 207.390.  A "crime related to racketeering" is defined in 207.360.  None of the crimes listed in NRS 207.390 involve violation of the Nevada state securities laws

18

under NRS 90.570, 90.580, 90.605 and 90.660.  Because Plaintiff
has failed to plead a "crime related to racketeering" sufficiently
for pleading a violation of NRS 207.400, his claim of racketeering
will be dismissed.

**G.  Punitive Damages**

Examining, first, whether Plaintiff is entitled to punitive
damages, we examine the statutory provisions under which Plaintiff
has sued.

First, punitive damages are not allowed under a private claim
for violation of Securities Law 10b-5.  See Stone v. Kirk, 8 F.3d
1079, 1093 (6th Cir. 1993)("punitive damages are not authorized in
private actions under § 10(b) and Rule 10b-5.")(quoting Green v.
Wolf Corp., 406 F.2d 291, 303 (2d Cir. 1968) cert. denied, 395
U.S. 977, 89 S.Ct. 2131, 23 L.Ed. 2d 766 (1969)).

Punitive damages are also not available for a violation of
Section 12(a)(2), 15 U.S.C. § 77L(a)(2), as recovery is limited by
15 U.S.C. § 78bb.  As section 78bb specifies: "...no person
permitted to maintain a suit for damages under the provisions of
this title shall recover, through satisfaction of judgment in one
or more actions, a total amount in excess of his actual damages on
account of the act complained of."  15 U.S.C. § 78bb.

We note that the civil damages available under NRS 90.660 are
also quite limited and do not include punitive damages.

Since we have dismissed all of Plaintiff's tort claims, the
last basis, in tort for punitive damages, is the breach of implied
covenant of good faith and fair dealing.

19

Under Nevada law, "every contract imposes upon the contracting parties, the duty of good faith and fair dealing." State v. Sutton, 103 P.3d 8, 20 (2004)(quoting Hilton Hotels v. Butch Lewis Productions, 109 Nev. 1043, 1046, 862 P.2d 1207, 1209 (1993)). However, the recovery for this action is usually limited in contractual damages except when there is a special relationship between the person who breached the implied covenant and the victim of such breach. Such tort damages for breach of implied covenant are available when "the party in the superior or entrusted position has engaged in grievous and perfidious misconduct." Id. (quoting Great American Ins. v. General Builders, 113 Nev. 346, 355, 934 P.2d 257, 263 (1997)(quoting K-Mart Corp. v. Ponsock, 103 Nev. 39, 732 P.2d 1364 (1987))).

In Ponsock, the Nevada Supreme Court held that "the use of punitive damages in appropriate cases of breach of the duty of good faith and fair dealing expresses society's disapproval of exploitation by a superior power and creates a strong incentive for employers to conform to clearly defined legal duties. Such duties are so explicit and so subject of common understanding as to justify the punitive award." Ponsock, 103 Nev. at 53. In Ponsock, a "bad faith discharge" was held to have been a tortious breach of implied covenant of good faith and fair dealing. Id. at 54. Here, Plaintiff has demonstrated a special reliance that he had on Innotrac in the exercising of his options that would survive a motion to dismiss. He has plead that Defendants were in a superior position due to their relative knowledge of securities and the fact that they had significant bargaining power as his

20

employer.  Because of this special element of reliance, Plaintiff may be entitled to damages based on tortious breach of implied covenant.  Because this is a claim based on a tort, punitive damages might be allowed and therefore Defendants' motion to dismiss the claim for punitive damages will be denied.

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss (#14) is granted with respect to claims for fraud or intentional misrepresentation (Third Claim for Relief), negligent misrepresentation (Fourth Claim for Relief), breach of duty of care (Fifth Claim for Relief), intentional omissions or failure to disclose (Sixth Claim for Relief), general negligence (Eighth Claim for Relief) and RICO claims (Twelfth Claim for Relief) with leave for Plaintiff to amend.

**IT IS HEREBY FURTHER ORDERED** that Defendants' motion to dismiss (#14) is granted with respect to the claim of breach of fiduciary duty (Seventh Claim for Relief) without leave for Plaintiff to amend.

**IT IS HEREBY FURTHER ORDERED** that Defendants' motion to dismiss (#14) is denied with respect to the claims of federal securities violation (Ninth Claim for Relief), Nevada securities violation(Eleventh Claim for Relief), violation of section 10b-5 (Tenth Claim for Relief) and punitive damages (Thirteenth Claim for Relief).

/ / /

/ / /

/ / /

/ / /

21

1    **IT IS HEREBY FURTHER ORDERED** that Plaintiff shall have twenty

2   (20) days within which to file an amended complaint, and, if he

3   does not do so, the dismissals set forth above will stand as

4   final.

5

6        This 22nd day of December, 2005.

7

8   _____
                                   UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      22